# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### May 3, 2005 Session

## STATE OF TENNESSEE v. HENRY ERIC NASH

### Direct Appeal from the Circuit Court for Tipton County
### No. 4747     Joseph H. Walker, III, Judge

---

### No. W2004-02403-CCA-R3-CD  - Filed November 7, 2005

---

The defendant appeals his conviction for possession of cocaine with intent to deliver and the resulting eleven-year sentence. Following our review, we find all issues presented to be either waived or without merit; therefore, we affirm both the conviction and sentence.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which DAVID H. WELLES, J., joined. GARY R. WADE, P.J., filed a concurring opinion.

C. Michael Robbins (on appeal) and Larry M. Sargent (at trial), Memphis, Tennessee, for the appellant, Henry Eric Nash.

Paul G. Summers, Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; Elizabeth T. Rice, District Attorney General; and James Walter Freeland, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

Facts and Procedural History

The defendant, Henry Eric Nash, was convicted by a jury of one count of possession of a Schedule II controlled substance (cocaine) with intent to deliver (a Class B felony). Thereafter, he was sentenced as a Range I, standard offender to eleven years in the Department of Correction. On direct appeal to this court, the defendant contends that:

(1)     the evidence was insufficient to support the conviction;
(2)     the trial court erred in allowing the prosecution to introduce evidence identifying the defendant as being named in the search warrant and by

permitting Sergeant Taylor to recite hearsay details of information provided by an informant in connection with securing the warrant;

(3)     the trial court erred in its instructions to the jury concerning the definition of "knowingly";

(4)     the enhancement factors were inappropriately applied in view of the Supreme Court's holding in Blakely v. Washington; and

(5)     the trial court erred in denying alternative sentencing.

Following a thorough review of the issues presented,[1] we affirm the defendant's conviction and sentence.

At trial, Sergeant GarrisonTaylor testified that he is employed with the Covington Police Department as supervisor of the drug unit. His experience in law enforcement led him to estimate the average price of cocaine to be $200 per gram.

Turning to the present case, Sergeant Taylor recalled that he personally observed the defendant at the residence located at 802 Hill Street in the days leading up to May 30, 2003. He stated that he obtained a search warrant, which was directed to the Hill Street residence and the defendant. Sergeant Taylor was supervising the execution of the search warrant and was accompanied by other officers when the warrant was executed in the early morning hours of May 30, 2003.

Once on the scene, Sergeant Taylor and the other officers initiated a knock and announce, and, after receiving no response, forcibly entered the residence. The defendant was alone and was found in the rear bedroom of the residence. Upon entering the bedroom, the officers discovered what was believed to be compressed powder cocaine and a blue pill bottle containing crack cocaine on a night stand within the defendant's arm's reach. They also found $485 in cash in a dresser drawer in the same room. Notably, no drug paraphernalia was found and the defendant did not appear to be under the influence of cocaine or alcohol. After performing a field test on the seized contraband, Sergeant Taylor's suspicions were confirmed, as the test indicated that both substances contained cocaine base. The substances were later sent to the Tennessee Bureau of Investigation (TBI) lab for a confirmed identification.

On cross-examination, Sergeant Taylor explained that he and the other officers found the defendant in the rear bedroom in his boxer shorts, as if he had been asleep. He reiterated that the drugs were found on a night stand next to the bed, while the cash was discovered in the drawer of a dresser located against a wall on the side of the bed. Sergeant Taylor stated that the defendant appeared to have been sleeping on the left side of the bed, next to the table where the drugs were found. He did not recall if he saw any of the defendant's clothes in the house.

On redirect examination, Sergeant Taylor testified that the cash was found in denominations

---

[1] In conducting our analysis, we have addressed the issues in a different sequence than they were presented in the defendant's brief.

of thirteen twenty-dollar bills; eleven ten-dollar bills; and twenty-three five-dollar bills.  He recalled that an aggressive pit bull met the officers as they entered the house and that the defendant had to restrain the dog in order for them to execute the search. Sergeant Taylor noted that the defendant did not exhibit fear in approaching the dog.  On recross-examination, he acknowledged that dogs are generally protective of their homes and that there were other pit bulls in residences in Tipton County.

Investigator Pam Ford Simpson testified that she is employed with the Covington Police Department and that she was familiar with the defendant and the Hill Street residence because she also lives in that neighborhood.  She stated that she is able to observe persons coming and going from the house and that she had seen the defendant in the yard with friends "on several occasions." Investigator Simpson testified that she was involved in the execution of the search warrant on the residence.  On cross-examination, she acknowledged that she did not see the defendant at the Hill Street residence every day.

Special Agent Dana Rose testified that she is employed with the TBI in the controlled substances identification division.  Following the deposit of the seized contraband by Sergeant Taylor, Special Agent Rose identified the substances to be 3.9 grams of cocaine base and 6.5 grams of cocaine, both Schedule II controlled substances.

Minnie Lee Nash testified that her son, the defendant, was living with her at 91 Talley Road in Atoka, Tennessee, in May 2003.  She acknowledged that he did stay away from the house occasionally on Saturday nights.  On cross-examination, Nash stated that she would not allow crack cocaine to be kept at her home.

Talesa Nash then testified that, although she was married to the defendant, they were not living together in May 2003 or at the time of trial.  She stated that the defendant visited her home at 802 Hill Street often and sometimes spent Saturday nights there.  Mrs. Nash recalled that in late May 2003, she hosted a barbecue for friends and family at her home in anticipation of moving from the residence.  She stated that her belongings were packed in boxes and that she had some money on the dresser in her bedroom.  Mrs. Nash testified that she was not at home when the search warrant was executed because she left after becoming upset with the defendant for drinking. She stated that when she left at approximately 7:30 or 8:00 p.m., the defendant was asleep on her bed and six or seven people were playing games in her bedroom. Mrs. Nash noted that her sons have a pit bull named Zeus, which they have had for some time.

On cross-examination, Mrs. Nash testified that her sons are ages ten, six, and five.  She explained that the defendant knew how to control the dog, as did the rest of the family.  She stated that she had seen the defendant smoke crack cocaine approximately two times but that she did not see him do so at her house.  She reiterated that the defendant slept at her residence on May 30, 2003, because she left him there after discovering that he had been drinking.  Mrs. Nash testified that the defendant did not stay at her residence when she was not there.  She further stated that the cocaine seized during the search did not belong to her or her sons.

-3-

As the final witness at trial, Sheldon Edwards testified that he was present with the defendant at the Hill Street residence on May 29, 2003. He recalled that a group of friends and family came to the residence to watch a basketball game, smoke, and drink. Edwards stated that those attending the party were contributing money to help Mrs. Nash move and that they brought drugs and alcohol with them as they came into the house. Edwards testified that he and some other individuals moved the defendant into the bedroom at approximately 8:00 or 9:00 p.m. because he was drunk and that three people were left in the house after the defendant passed out. Edwards testified that he saw the drugs on the night stand when he took the defendant to the bedroom but that he did not see the defendant put the drugs on the table.

On cross-examination, Edwards testified that he saw people at the party snorting powder cocaine, smoking crack cocaine, smoking marijuana, and smoking marijuana laced with cocaine. He further stated, however, that he did not see the defendant smoking cocaine and that he and the defendant only smoked marijuana. Edwards reiterated that people were giving money to Mrs. Nash to help with her move and further noted that people who attended the party left some drugs in the house. On redirect-examination, Edwards stated that he never saw the defendant bring any drugs into the house.

Based upon the evidence presented at trial, the defendant was convicted of one count of possession of a Schedule II controlled substance (cocaine) with intent to deliver and was sentenced as a Range I, standard offender to eleven years in the Department of Correction. He now appeals his conviction and sentence.

Analysis

I. Sufficiency

The defendant first challenges the sufficiency of the evidence to support his conviction. This court does not reweigh or reevaluate the evidence in determining sufficiency. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). A jury verdict, once approved by the trial judge, accredits the State's witnesses and resolves all conflicts in favor of the State. State v. Bigbee, 885 S.W.2d 797, 803 (Tenn. 1994). Accordingly, the State is entitled to the strongest legitimate view of the evidence and all legitimate and reasonable inferences that may be drawn therefrom. Id. It is our duty to affirm the conviction if the evidence, viewed under the appropriate standards, was sufficient for any rational trier of fact to have found the essential elements of the offense beyond a reasonable doubt. See Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); State v. Elkins, 102 S.W.3d 578, 581 (Tenn. 2003).

Although the evidence of the defendant's guilt is circumstantial in nature, circumstantial evidence alone may be sufficient to support a conviction. State v. Tharpe, 726 S.W.2d 896, 899-900 (Tenn. 1987); State v. Gregory, 862 S.W.2d 574, 577 (Tenn. Crim. App. 1993). The circumstantial evidence, however, must exclude every other reasonable theory or hypothesis other than guilt. Tharpe, 726 S.W.2d at 900. In addition, "it must establish such a certainty of guilt of the accused

as to convince the mind beyond a reasonable doubt that [the defendant] is the one who committed the crime." Id. (citations omitted).

The conviction offense requires proof that the defendant knowingly possessed cocaine with the intent to deliver it. See Tenn. Code Ann. § 39-17-417 (2003). Possession may be actual or constructive. State v. Shaw, 37 S.W.3d 900, 903 (Tenn. 2001). To prove constructive possession, the State must establish the defendant had the power and intention at a given time to exercise dominion and control over the drugs either directly or through others. Id. at 903; State v. Patterson, 966 S.W.2d 435, 445 (Tenn. Crim. App. 1997). Presence in the area of the drugs or association with those possessing drugs is insufficient, alone, to establish constructive possession. State v. Cooper, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987). Further, pursuant to Tennessee Code Annotated section 39-17-419, "[i]t may be inferred from the amount of a controlled substance or substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing."

Taking the evidence in the light most favorable to the State, we conclude that there was sufficient evidence to prove that the defendant knowingly possessed cocaine. At trial, Sergeant Taylor and Investigator Ford both testified they had personal knowledge that the defendant had been at the Hill Street residence in the days leading up to May 30, 2003. Furthermore, when the search warrant was executed, the defendant was the only individual in the house and the cocaine was found within his reach, on a table next to the bed where he had been sleeping. Moreover, it was undisputed that the seized contraband was positively identified as 10.4 grams of cocaine.

We further conclude that the evidence was sufficient to find that the defendant intended to deliver the cocaine. In addition to the amount of contraband seized from the residence and its estimated street value of $2080, there are additional facts supporting the inference that the defendant intended to sell or deliver the cocaine. We particularly note that Sergeant Taylor testified that he did not discover any drug paraphernalia in the house and did not find the defendant under the influence of drugs or alcohol. Further, although the testimony suggested that the defendant did not live at the residence, the record reflects that Sergeant Taylor and Investigator Ford had seen him there in the days prior to his arrest. Finally, the officers seized $485 in cash from the room in which the defendant slept, in the following denominations: thirteen twenty-dollar bills; eleven ten-dollar bills; and twenty-three five-dollar bills. In our view, this evidence, taken cumulatively, was sufficient to support the inference that the defendant intended to deliver the cocaine.

II. Testimony of Sergeant Taylor

Next, the defendant contends that the trial court erred in allowing the prosecution to introduce evidence identifying the defendant as named in the search warrant, and by permitting Sergeant Taylor to recite hearsay details of an informant's statement used to secure the search warrant. The record reflects that the defendant filed a motion in limine seeking to exclude, inter alia:

1. The one page document entitled Affidavit for Search Warrant and Search Warrant:

a. The Affidavit for Search Warrant alleges Sgt. Garrison Taylor received numerous complaints from concerned citizens of crack cocaine being sold from 802 Hill Street in Covington, Tennessee;

b. The Affidavit for Search Warrant alleges that an un-named [sic] confidential informant, while wearing an audio device, purchased crack cocaine from a black male named Henry Nash at 802 Hill prior to the issuance of the search warrant; and

c. The Search Warrant identifies the defendant as violating the law and names him as the person occupying the premises to be searched by the warrant.

Prior to trial, the parties and the trial court addressed the motion, at which time the following exchange was made:

[State]: Your Honor, there is a search warrant, and there will be some minimum reference to a search warrant just to establish that the police aren't kicking somebody's door in without some kind of legal writ. As far as the various language of the search warrant about concerned citizens and a controlled drug buy within the past 72 hours, we're not going to go into that. That's what the Motion in Limine addresses.

[Trial Court]: The Court grants the motion with regard to the particulars in the affidavit, absent a jury-out hearing about the admissibility of any prior bad conduct.

[State]: Your Honor, what we frankly had planned to do was just make some bare reference to the search warrant and make it an exhibit for identification purposes without being published to the jury, no reference to concerned citizens and that sort of thing.

[Trial Court]: Yes, sir. Any response to that?

[Defense Counsel]: Your Honor, I have no objection to that.

[Trial Court]: All right. The Court will allow that.

[Defense Counsel]: Your Honor, we also raise in our Motion in Limine any reference to the search warrant specifically identifying [the defendant].

[Trial Court]: The court would allow, I think, a witness to establish that they were at the proper residence and to establish, if they know, if the witnesses [sic] knows, whose residence it is, so that whatever the facts are – I don't know what the facts are – but as far as any prior conduct alleged in the affidavit by the defendant, the Court will grant the Motion in Limine, so that the State is not to refer to that in opening or

voir dire or with any witnesses unless there's a prior jury-out hearing to determine the admissibility of any prior bad conduct.

At trial, Sergeant Taylor was examined as follows:

> [State]: All right. Now, directing your attention back to May 30, 2003, and the address of 802 Hill Street in Covington, first of all, that is in Tipton County, is it not?
>
> [Sgt. Taylor]: That's correct.
>
> [State]: Did you have prior knowledge that [the defendant] was staying at that residence in the days before and including May 30, 2003?
>
> [Sgt. Taylor]: Yes, I did.
>
> [State]: Had you personally observed him at that residence on May 30 and the days preceding May 30?
>
> [Sgt. Taylor]: Yes, I have.
>
> [State]: Did you have knowledge on occasion that he was inside that residence within 72 hours of May 26, 2003?
>
> [Sgt. Taylor]: That's correct.
>
> [State]: On May 26, 2003 – first of all, let me show you a piece of paper. If I may show you what purports to be an Affidavit for Search Warrant and a Search Warrant. Are you familiar with that?
>
> [Sgt. Taylor]: Yes, I am.
> [State]: Is that a true and exact copy of the search warrant that you were involved in obtaining?
>
> [Sgt. Taylor]: Yes, it is.
>
> [State]: On what date was it obtained?
>
> [Sgt. Taylor]: It was signed on May 26, 2003, at 9:02 a.m., in General Sessions Court, by Judge Peeler.
>
> [State]: What day was it executed or did you –
>
> [Sgt. Taylor]: The date of execution would have been on May 30.

[State]: And what address was it directed to?

[Sgt. Taylor]: That would have been 802 Hill Street, Covington, Tipton County, Tennessee.

[State]: And what person, if any, was it directed to at that address?

[Defense Counsel]: Your honor, I'd object to relevance. Who it's directed to is not relevant to the case. The only issue here is whether or not they had a valid search warrant to search the premises, which they did.

[Trial Court]: All right. The Court will allow the question, overrule the objection.

[State]: To what person or persons was the search warrant directed at 802 Hill Street in Covington?

[Sgt. Taylor]: Would have been [the defendant].

The defendant now challenges this portion of Sergeant Taylor's testimony on grounds that it constitutes inadmissible hearsay, that it is irrelevant, and that any probative value it may have had is substantially outweighed by its prejudicial nature. See Tenn. R. Evid. 802; 402; 403.

In first addressing the defendant's hearsay argument, we note that the questions presented to Sergeant Taylor were phrased and answered such that they represented only his personal observations and not the statement of an informant. Although an informant could have observed similar activity, Sergeant Taylor did not relay secondhand information but only testified as to the activity he witnessed firsthand. Therefore, the testimony was not hearsay. See Tenn. R. Evid. 802.

Next, we turn to the relevance of Sergeant Taylor's testimony. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 402. Once the court concludes the evidence is relevant, it should exclude the evidence if its probative value is substantially outweighed by its prejudicial effect. Tenn. R. Evid. 403; State v. James, 81 S.W.3d 751, 757 (Tenn. 2002). A trial court's decision as to the relevance of evidence under Rule 402 will be reversed only upon a showing of abuse of discretion. State v. Powers, 101 S.W.3d 383, 395 (Tenn. 2003).

Upon review, we conclude that the identification of the person to whom the search warrant was directed was irrelevant to the issues presented at trial. However, given the nature of the evidence presented, we further conclude that the trial court's failure to exclude the testimony was harmless error. As we have noted, the record reflects that the defendant was the only person found in the house and that over ten grams of cocaine were discovered next to the bed where the defendant

ad been sleeping. Further, the defendant did not appear to be intoxicated by either drugs or alcohol, and no drug paraphernalia was found at the residence. Finally, officers had seen the defendant at the Hill Street residence in the days leading up to his arrest. Therefore, it is our determination that even if the irrelevant testimony had been excluded, there is not a reasonable probability that a different conclusion would have resulted. As such, the error was harmless.

### III. Jury Instruction on the Definition of "Knowing"

The defendant further contends that the trial court erred in instructing the jury as to both the "nature of conduct," and the "circumstances surrounding the conduct" language in defining the term "knowingly" to the jury. In the present case, the trial court instructed the jury that:

> Knowingly means that a person acts knowingly with respect to the conduct or circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist. The requirement of knowingly is also established if shown that the defendant acted intentionally.

> Intentionally means that a person acts intentionally with respect to the nature of the conduct or the result of the conduct when it's the person's conscious objective or desire to engage in the conduct.

Initially, we note that the defendant has waived this issue for failure to raise it in his motion for new trial. Specifically, Tennessee Rule of Appellate Procedure 3(e) provides that for appeals of "cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence, jury instructions granted or refused, . . . or other action committed or occurring during the trial of the case, or other ground upon which a new trial is sought, unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived."

Notwithstanding waiver, we further conclude that the trial court did not err in instructing on both the "nature of conduct" and the "circumstances surrounding conduct" language. This court has previously held that possession of cocaine with intent to sell or deliver is a nature of conduct offense, requiring that the defendant be aware he or she is in possession of cocaine. State v. Frank Gaitor, No. E2001-02531-CCA-R3-CD, 2002 Tenn. Crim. App. LEXIS 1106, at *34 (Tenn. Crim. App., at Knoxville, Dec. 23, 2002) app. denied (Tenn. May 27, 2003). Further, the culpable mental states of "intentional" and "knowing" are applicable to nature of conduct offenses. State v. Deji A. Ogundiya, No. M2002-03099-CCA-R3-CD, 2004 Tenn. Crim. App. LEXIS 152 (Tenn. Crim. App., at Nashville, Feb. 19, 2004). Tennessee Code Annotated section 39-11-302 provides the following definitions for those terms:

> (a) "Intentional" refers to a person who acts intentionally with respect to the nature of the conduct or to a result of the conduct when it is the person's conscious objective or desire to engage in the conduct or cause the result.

(b) "Knowing" refers to a person who acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist. A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result.

Tenn. Code Ann. § 39-11-302(a), (b) (2003). In the instant case, the trial court properly omitted the separate "result of conduct" language from the definition of "knowing" and instructed the jury on the remainder of the definition. A plain reading of the statute leads us to conclude that the instruction on both the "nature of conduct" and "circumstances surrounding conduct" language was not in error, in that the proper definition can be applied as the conduct element of the offense dictates. In this case, the trial court explicitly instructed that knowing possession of cocaine was an essential element of the offense. Moreover, the definition of intentional is the same for both result of conduct and nature of conduct offenses. Therefore, the trial court did not err in instructing the jury on the entire definition as given in the statute.

## IV. Blakely v. Washington

The defendant also challenges his enhanced sentence based upon the Supreme Court's holding Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531 (2004). Our Supreme Court, however, has recently determined that Blakely does not impact the validity of Tennessee's sentencing scheme. See State v. Gomez, 163 S.W.3d 632 (Tenn. 2005). Thus, the defendant is not entitled to relief based on this issue.

## V. Denial of Alternative Sentencing

Finally, the defendant contends that the trial court erred in denying alternative sentencing. This court's review of a sentence imposed by the trial court is de novo with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d) (2003). This presumption is conditioned upon an affirmative showing in the record that the trial judge considered the sentencing principles and all relevant facts and circumstances. State v. Pettus, 986 S.W.2d 540, 543 (Tenn. 1999). If the trial court fails to comply with the statutory directives, there is no presumption of correctness and our review is de novo. State v. Poole, 945 S.W.2d 93, 96 (Tenn. 1997).

The burden is upon the appealing party to show that the sentence is improper. Tenn. Code Ann. § 40-35-401(d), Sentencing Commission Comments. In conducting our review, we are required, pursuant to Tennessee Code Annotated section 40-35-210, to consider the following factors in sentencing:

(1) [t]he evidence, if any, received at the trial and the sentencing hearing; (2) [t]he presentence report; (3) [t]he principles of sentencing and arguments as to sentencing alternatives; (4) [t]he nature and characteristics of the criminal conduct involved; (5)

[e]vidence and information offered by the parties on the enhancement and mitigating factors in §§ 40-35-113 and 40-35-114; and (6) [a]ny statement the defendant wishes to make in the defendant's own behalf about sentencing.

Under the Criminal Sentencing Reform Act of 1989, trial judges are encouraged to use alternatives to incarceration. An especially mitigated or standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary. Tenn. Code Ann. § 40-35-102(6) (2003).

In determining if incarceration is appropriate, a trial court may consider the need to protect society by restraining a defendant having a long history of criminal conduct, the need to avoid depreciating the seriousness of the offense, whether confinement is particularly appropriate to effectively deter others likely to commit similar offenses, and whether less restrictive measures have often or recently been unsuccessfully applied to the defendant. Tenn. Code Ann. § 40-35-103(1) (2003); see also State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

A court may also consider the mitigating and enhancing factors set forth in Tennessee Code Annotated sections 40-35-113 and -114 as they are relevant to the section 40-35-103 considerations. Tenn. Code Ann. § 40-35-210(b)(5) (2003); State v. Boston, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996). Additionally, a court should consider the defendant's potential or lack of potential for rehabilitation when determining if an alternative sentence would be appropriate. Tenn. Code Ann. § 40-35-103(5) (2003); Boston, 938 S.W.2d at 438.

There is no mathematical equation to be utilized in determining sentencing alternatives. Not only should the sentence fit the offense, but it should fit the offender as well. Tenn. Code Ann. § 40-35-103(2); State v. Batey, 35 S.W.3d 585, 588-89 (Tenn. Crim. App. 2000). Indeed, individualized punishment is the essence of alternative sentencing. State v. Dowdy, 894 S.W.2d 301, 305 (Tenn. Crim. App. 1994). In summary, sentencing must be determined on a case-by-case basis, tailoring each sentence to that particular defendant based upon the facts of that case and the circumstances of that defendant. State v. Moss, 727 S.W.2d 229, 235 (Tenn. 1986).

At the conclusion of the sentencing hearing, the trial court noted the following:

I've reviewed the presentence report, the principles of sentencing, the statement of the defendant, the nature and characteristics of the criminal conduct involved[.]

. . . .

Under T.C.A. 40-35-114, the Court finds enhancing factor number two applies; that is, the defendant has a previous history of criminal behavior or criminal convictions in addition to what's necessary to establish the appropriate range.

The defendant has multiple misdemeanor convictions and multiple felony

-11-

convictions. He has in 1999 an E felony of failure to appear, another E felony of failure to appear, a possession of a weapon, and another possession of a weapon; in 1998 the C felony of cocaine, and another – an evading arrest, that is, in 1998. In 1997 a possession of a weapon by a convicted felon; in 1993 an evading arrest, a possession with intent conviction; in 1992 an evading arrest, and multiple other misdemeanor convictions.

. . . .

The defendant does not qualify for probation under T.C.A. 40-35-303, and the Court doesn't believe alternate sentencing is appropriate under T.C.A. 40-35-106.

The defendant has a record of violation of the law. As he noted in his statement, he's been into court multiple times. Measures less restrictive than confinement have been applied many times without success. He's had a blatant disregard for the law for years. The Court finds confinement is necessary to protect society, where he has, this defendant, a long history of criminal conduct; to avoid deprecating [sic] the seriousness of the offense; that a sentence for this defendant would perhaps be a deterrent to others; and measures less restrictive have been applied multiple times to the defendant without success.

Upon review of the trial court's findings, we conclude that it considered both the applicable sentencing principles and the particular facts of the case and properly found that the defendant was not an appropriate candidate for alternative sentencing.

### Conclusion

Based on the foregoing reasoning, we affirm the defendant's conviction and sentence.

_____
JOHN EVERETT WILLIAMS, JUDGE

-12-